# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-00-00218-CR

**Andre Devon Pea, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF DALLAS COUNTY, 204TH JUDICIAL DISTRICT
NO. F-9900721-PQ, HONORABLE MARK H. NANCARROW, JUDGE PRESIDING**

Andre Devon Pea appeals his conviction for murder. *See* Tex. Penal Code Ann. § 19.02(b)(1), (2) (West 1994). He received a sentence of ninety-nine years in prison. On appeal, appellant contends that he received ineffective assistance of counsel and that the trial court erroneously admitted extraneous offense evidence. We affirm the district court's judgment.

## FACTS

In 1990, appellant was indicted for the murder of Rex Reginald McNutt. Appellant was indicted based on a statement by Ira Ward to the police shortly after McNutt's death. Ward gave two conflicting statements. In his first statement, Ward told the police that, while on his balcony, he witnessed appellant kill McNutt. When appellant's defense counsel interviewed him, Ward recanted this statement and instead claimed that he did not see appellant shoot or kill anyone. Thereafter, appellant's indictment was dismissed.

In 1999, Michael Montgomery contacted the Dallas Police Department with information implicating appellant in the McNutt murder. Appellant was again indicted. Appellant was represented by different counsel in 1999 than in 1990. Before a jury, appellant pleaded not guilty to the charge.

Montgomery testified that he witnessed appellant kill McNutt. Defense counsel attempted to impeach Montgomery's testimony by emphasizing that in exchange for the information he gave to the police, Montgomery hoped to receive some benefit. Specifically, Montgomery expected assistance from the police in an upcoming hearing with the parole board regarding a parole violation. Defense counsel argued that Montgomery's motivation for testifying should arouse suspicion regarding his intentions and credibility.

In another attempt to impeach Montgomery's testimony, defense counsel called Ward as a witness. Instead of offering testimony consistent with his statement to appellant's attorney in 1990, however, Ward testified that he saw appellant commit the murder. Subsequently, appellant's defense counsel called appellant's previous attorney to the stand to impeach Ward's testimony. That attorney testified that he did not think it was possible for Ward to witness the murder from the vantage point of his balcony as Ward had originally stated in his 1990 statement to the police.

The jury convicted appellant of murder. During the punishment phase of the trial, the State presented evidence to the jury concerning a previous offense that appellant committed. The jury assessed appellant's punishment at ninety-nine years.

**DISCUSSION**

*Ineffective Assistance of Counsel*

The United States and Texas Constitutions guarantee the right to counsel at trial;[1] this right has been interpreted as a right to reasonably effective counsel. *Strickland v. Washington,* 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55-56 (Tex. Crim. App. 1986). In *Hernandez v. State*, Texas adopted the federal standard, as articulated in *Strickland v. Washington*, for reviewing claims of ineffective assistance of counsel. *Hernandez*, 726 S.W.2d at 57. This standard requires the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687.

To satisfy the first prong of this test, an appellant must demonstrate that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy. *Id.* at 688; *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). In general, an appellate court will not speculate about counsel's trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Delrio v. State*, 840 S.W.2d 443 (Tex. Crim. App. 1992). An error in trial strategy will only be deemed inadequate representation

---

[1] U.S. Const. amend. VI; Tex. Const. art. I, § 10.

3

if counsel's actions are without any plausible basis. *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978). The second prong of the *Strickland* test requires an appellant to show that counsel's deficient performance prejudiced the defense, thereby depriving the defendant of a fair trial. *Strickland*, 466 U.S. at 687; *Hernandez*, 726 S.W.2d at 57. Failure to establish either deficient performance or sufficient prejudice defeats an ineffective assistance of counsel claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

An appellate court's review of counsel's representation is highly deferential. *Strickland*, 466 U.S. at 689. Counsel's performance is not evaluated in hindsight but rather from counsel's perspective at the time of trial. *Id.*; *Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex. Crim. App. 1991). In reaching a conclusion on a claim for ineffective assistance of counsel, we consider the totality of counsel's representation, not just isolated acts or omissions. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). We indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689; *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

The proponent of a claim for ineffective assistance of counsel must rebut this presumption. *Strickland*, 466 U.S. at 689. Such a claim must be proven by a preponderance of the evidence. *McFarland*, 928 S.W.2d at 500. Although an appellant may pursue this claim in a motion for new trial, *Thompson v. State*, 9 S.W.3d at 813-14, the Texas Court of Criminal Appeals has held recently that this claim may be properly asserted for the first time on appeal. *Robinson v. State*, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000) (recognizing the practical

4

difficulties with requiring an appellant to claim ineffective assistance at the time of trial or immediately post-trial).

Appellant contends that the sole issue at trial was the identity of the murderer and that his defense counsel called a witness who identified appellant as the assailant. Appellant argues that his counsel knew that Ward would incriminate him and, therefore, should not have called Ward as a witness.

The record does not reflect that defense counsel knew Ward would adopt his 1990 position and would identify appellant as the killer. To the contrary, during closing arguments defense counsel explained his reasons for calling Ward to the stand. Counsel's stated reasons included: (1) to show the jury the inconsistency between Ward's version and Montgomery's version of the murder; (2) to demonstrate that Ward's testimony should be discounted because, in the original prosecution, Ward was the initial eyewitness who identified appellant as the assailant and later recanted; (3) to prove that eyewitnesses will tailor stories to suit their own purposes; (4) to show the jury how people think and that nothing can be relied upon; and (5) for the jury to consider Montgomery's credibility. Because defense counsel expressly stated his reasons for calling Ward in his closing argument, the record supports the State's contention that counsel intended to have Ward testify as he did as part of trial strategy.

Appellant also asserts that Ward was not needed as a witness for impeachment purposes because Montgomery's credibility was sufficiently discounted by revealing his motivation for testifying. It was not unreasonable, however, for defense counsel to attempt to discredit Montgomery further. While it is true that Ward further incriminated appellant, different versions

5

of the murder could have undermined Montgomery's credibility. Moreover, calling appellant's previous attorney as a witness could have discounted Ward's revised statement as unreliable.

Appellant further claims that defense counsel acted unreasonably by choosing not to interview Ward before putting him on the stand. Appellant maintains that defense counsel's surprise at Ward's incriminating testimony demonstrates counsel did not prepare Ward as a witness. The record is silent as to whether defense counsel prepared Ward as a witness. A silent record does not require an appellate court to speculate on the reason for trial counsel's decision. *Jackson*, 877 S.W.2d at 771.

Whether defense counsel was wrong to call Ward as a witness is arguable. The right to effective counsel, however, is not the right to error-free counsel. *Hernandez*, 726 S.W.2d at 58. Appellant fails to show that defense counsel's representation fell below an objective standard of reasonableness. Given the lack of other credible witnesses available to rebut Montgomery's testimony, we conclude that defense counsel's decision to call Ward can be viewed as falling within the range of reasonable representation. Consequently, appellant has not satisfied the first prong of the *Strickland* test.

Appellant also fails to meet the second prong of the *Strickland* test. To satisfy this prong, appellant must show with reasonable probability that, but for the counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687. The record contains sufficient evidence, apart from Ward's testimony, to sustain a guilty verdict.

Montgomery testified that appellant used a .22 caliber pistol. This statement is consistent with the testimony of another witness, Detective Linda Erwin, who testified that a

witness reported to her that appellant had a .22 caliber pistol on the day of the murder. Montgomery also testified that he saw appellant shoot McNutt four or five times. This testimony is consistent with other evidence presented at trial. For example, the autopsy report concluded that McNutt was shot four times and the Criminal Investigation Laboratory identified the bullets recovered from the body as those from a .22 caliber gun.

The testimony of police officer Gary Grable corroborated Montgomery's testimony. Grable testified that he verified Montgomery's description of the location of events with crime scene photographs. Grable also contacted another witness, Felicia Mixon, who was Montgomery's ex-wife and was mentioned in his statement. Grable obtained a written statement from Mixon in which she stated that appellant held a .22 pistol as he stood over McNutt's body and exclaimed, "I shot the bitch" and "I killed the fool." When Mixon departed from her statement during questioning at trial, the State called Grable to impeach Mixon's recanting testimony. Grable testified that he wrote Mixon's statement but ensured its accuracy by reading it back to her and making corrections in her presence before obtaining her signature on the statement.

Although Montgomery's motivation for testifying may have undermined his credibility, the jury could have believed him nonetheless. Montgomery testified that at his parole hearing, which was conducted sometime after he initially implicated appellant for the murder, the parole board did not indicate any knowledge of Montgomery's assistance in this case. Montgomery also testified that he was never promised, and did not receive, any assistance with

his parole hearing. In any event, Montgomery's motivation was thoroughly explored in cross-examination. The jury was therefore able to evaluate his credibility.

Given Montgomery's testimony and the corroborating physical evidence, we cannot say that in the absence of Ward's testimony the outcome of the proceedings would have been different. Thus, we conclude that appellant has not satisfied the second prong of the *Strickland* test. Accordingly, we overrule appellant's first issue on appeal.

### Extraneous Offense Evidence

In his second issue, appellant contends that the trial court erred in admitting extraneous offense evidence. Specifically, appellant contends that the trial court erred during the punishment phase of the trial by admitting evidence of a void conviction. Appellant asserts that because he was sentenced beyond the statutory maximum for that crime, his conviction and sentence were unlawful. *See Ex parte Beck*, 922 S.W.2d 181, 182 (Tex. Crim. App. 1996). Appellant further argues that, as a result, the conviction and sentence were void. The State concedes that the face of the extraneous offense judgment contained an illegal sentence, but disagrees that an unlawful sentence renders a conviction void.

A trial court is given wide discretion in determining the admissibility of evidence. *Ford v. State*, 919 S.W.2d 107, 115 (Tex. Crim. App. 1996). We review a trial court's ruling to admit or exclude evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996); *Ford,* 919 S.W.2d at 115. We may reverse a trial court's decision for an abuse of discretion only when it appears that the trial court applied an erroneous

legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. *Dubose v. State*, 915 S.W.2d 493, 497-98 (Tex. Crim. App. 1996). Conversely, we will not reverse a ruling so long as it falls "within the 'zone of reasonable disagreement.'" *Green*, 934 S.W.2d at 102 (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)).

Evidence of an extraneous offense may be admitted and offered at the punishment phase of trial as to:

> any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant . . . and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art 37.07, § 3(a) (West Supp. 2000). In other words, this provision permits extraneous offense evidence to be admitted if the trier of fact is satisfied beyond a reasonable doubt that the defendant committed or is criminally responsible for the misconduct. *Id.*; *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999). When a punishment is not authorized by law, the *sentence* is void; the conviction is left undisturbed except in certain circumstances not involved here. *Heath v. State*, 817 S.W.2d 335, 339-40 (Tex. Crim. App. 1991); *Shannon v. State*, 708 S.W.2d 850, 851 (Tex. Crim. App. 1986). We conclude the trial court did not abuse its discretion when it admitted the evidence of an extraneous offense. Thus, we overrule appellant's second issue.

9

## CONCLUSION

Having concluded that appellant has not satisfied the *Strickland* test for ineffective assistance of counsel and that the trial court did not abuse its discretion in admitting the extraneous offense evidence at the punishment phase of the trial, we affirm the trial court's judgment.

Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed: November 30, 2000

Do Not Publish